# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **S.K., a minor, by his parent, K.K.,** | ) )  ) **Civil Action No. 14-218** |
| Plaintiff, | ) |
| v. | ) ) |
| **NORTH ALLEGHENY SCHOOL DISTRICT,** | ) ) ) |
| Defendant. | ) ) ) |

## OPINION

**CONTI, Chief District Judge**

### I. Introduction

In this case, a mother asserts claims on behalf of her severely disabled child. The child's disabilities are compelling, and both parties acknowledge that the circumstances of the mother and child are heart wrenching. The court agrees that the circumstances presented here are emotional and difficult.

### II. Procedural History

Plaintiff S.K. ("S.K.") initiated this civil action on February 18, 2014, when K.K., S.K.'s mother, filed a complaint on S.K.'s behalf requesting injunctive relief and compensatory education to remedy the failure of defendant North Allegheny School District (the "District") to provide transportation ("transportation service") between S.K.'s daycare, Child's Way, and S.K.'s school, the Western Pennsylvania School for Blind Children ("WPSB"). (ECF No. 1 ¶¶ 3, 10, 17, 18.) According to the complaint, S.K. was denied access to a federally funded program, i.e., the District's transportation service, because of his disability. (Id. ¶¶ 27-40.) Based upon these core factual allegations, S.K. in the complaint asserts three claims:

- <u>Claim I</u> – A violation of § 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 701, et seq., 34 C.F.R. § 104.4;

- <u>Claim II</u> – A claim for a violation of Chapter 15 of the Pennsylvania Code,[1] 22 PA. CONS. STAT. § 15; and

- <u>Claim III</u> – A claim for violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132.

(Id. ¶ 1.)

On March 18, 2014, the District filed its motion to dismiss S.K.'s complaint and a brief in support of its motion. (ECF Nos. 9, 10.) On April 15, 2014, S.K. filed a brief in opposition to the District's motion to dismiss. (ECF No. 19.) On June 5, 2014, the court held a hearing on the District's motion to dismiss and the court determined that supplemental briefing was necessary to resolve the motion to dismiss. On July 7, 2014, the District filed its supplemental brief, (ECF No. 26), and on August 6, 2014, S.K. filed his supplemental brief in opposition. (ECF No. 27.) On August 22, 2014, the court held a hearing with respect to the supplemental briefing and requested that the parties file second supplemental briefs. On October 3, 2014, S.K. filed his second supplemental brief (ECF No. 30), and on October 31, 2014, the District filed its second supplemental brief (ECF No. 31.) On January, 22, 2015, the court held a hearing on the second supplemental briefing and advised the parties that the District's motion to dismiss would be granted for the reasons set forth on the record and more fully in this opinion.

**III. <u>Facts as Alleged in the Complaint</u>**

**A. Background**

---

[1] "Pennsylvania has 'implement[ed] the statutory and regulatory requirements of § 504' at the state level through the enactment of Chapter 15." <u>K.K. ex rel. L.K. v. Pittsburgh Pub. Sch.</u>, 590 F. App'x 148, 153 n.3 (3d Cir. 2014) (quoting 22 PA. CONS. STAT. § 15.1). "Because Chapter 15 does not preempt or expand the rights and liabilities under Section 504, the court will treat Chapter 15 as coextensive with Section 504." <u>A.W. ex rel. H.W. v. Middletown Area Sch. Dist.</u>, Civ. Action No. 13-2379, 2015 WL 390864, at *15 (M.D. Pa. Jan. 28, 2015); <u>K.K.</u>, 590 F. A'ppx at 153 n.3.

2

S.K. is a seven-year-old student within the District. (ECF No. 1 ¶ 13.) S.K. has a disability due to a diagnosis of Cornelai de Lange Syndrome that causes S.K. to be blind, deaf, and incapable of basic self-care, such as feeding and toileting. (Id. ¶¶ 4, 13.) S.K. also has significant speech and language delays, cognitive impairments, social interaction skills deficits, attention deficit, gross and fine motor delays, and other adaptive needs. (Id. ¶ 13.) At all relevant times, S.K. was recognized as a protected handicapped student, pursuant to § 504 of the Rehabilitation Act and qualified to receive an equal opportunity to participate in nonacademic and extracurricular services and activities that are provided to his nondisabled peers, in accordance with the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., and Chapter 14 of the Pennsylvania Department of Education Regulations, 22 PA. CODE § 14.101 et seq. (Id. ¶ 14.)

In 2011, S.K. began attending Child's Way, a daycare for children with special medical needs, so that K.K. could work. (Id. ¶ 18.) Child's Way maintains a staff of registered nurses and childcare associates.(Id.) Prior to S.K. attending Child's Way, and on other subsequent occasions, K.K. contacted all daycare centers within the District's boundaries to ascertain their ability to meet S.K.'s medical needs. (Id. ¶ 19.) All daycare facilities contacted lacked the needed medical and nursing support offered by Child's Way. (Id. ¶ 19.)

In March 2012, S.K. was enrolled in the District to attend kindergarten. (Id. ¶ 15.) On July 26, 2012, in accordance with the IDEA, the District conducted an evaluation of S.K. (Id. ¶ 16.) The District concluded that S.K. required full-time visually impaired and hearing impaired support. (Id.) S.K. was issued an Individualized Education Program ("IEP"), pursuant to the IDEA, according to which the appropriate placement for S.K. was at WPSB. (Id. ¶ 17.)

**B. S.K.'s Medical Needs and the District's Transportation Service**

The District transports students between their school and their respective daycare facilities located within the District's attendance boundaries and the school attendance zone. (Id. ¶ 20.) K.K. requested that the District provide transportation for S.K. between WPSB and Child's Way. (Id. ¶ 21.) The District transports two other students from the District's attendance zone to WPSB. (Id. ¶ 22.) Child's Way is located 1.69 to 1.78 miles from WPSB. (Id.) To support her request, K.K. provided the District with a letter dated July 28, 2011, from Dr. Brian Kilpela, M.D., providing that S.K. is not able to attend a "regular" daycare and that the type of care S.K. receives at Child's Way "is medically necessary due to his conditions." (Id. ¶ 23.) K.K. also provided the District with correspondence from Erin Colvin ("Colvin"), a board certified pediatric nurse practitioner and Clinical Director of Child's Way. (Id. ¶ 24.) Colvin asserted in the correspondence that Child's Way is a good option for many medically fragile children "due to their consistent nursing care, whereas there is a risk of call-offs and inconsistent schedules with home nursing care." and requested "that [S.K.] and his mother be afforded the same opportunity [as other children in the District are given], but in a setting where nurses can give [S.K.] the medical care that he requires." (Id.) The District refused to provide S.K. transportation between Child's Way and the WPSB because Child's Way is located outside of the attendance border of the district. (Id. ¶ 25.) Due to the lack of transportation between Child's Way and WPSB, and K.K.'s inability to arrange private transportation, S.K. did not attend school for the 2012-2013 and 2013-2014 school years. (Id. ¶ 26.)

S.K. asserts that the District discriminated against him by denying him equal opportunity to participate in the nonacademic and extracurricular service, i.e. the transportation service. (Id. ¶ 28.) S.K. alleges that school districts are required to provide handicapped students with aids, services and accommodations that are designed to meet the educational needs of a protected

handicapped student. (Id. ¶ 35.) These accommodations may include, but, are not limited to, special transportation. (Id. ¶ 35.) S.K. asserts that from August 2012, the District has discriminated against him by failing to reasonably accommodate his need for transportation service between his school and Child's Way, a service that the District provides to S.K.'s nondisabled peers. (Id. ¶¶ 31, 40.)

On August 19, 2013, K.K., on behalf of S.K., filed a request for an administrative due process hearing with the Office for Dispute Resolution ("ODR') alleging, among other claims, that the District violated § 504 of the Rehabilitation Act and Chapter 15 of the Pennsylvania Code by denying S.K. the benefit of the transportation service between Child's Way and WPSB. (Id. ¶¶ 10, 19.) S.K. sought injunctive relief and compensatory education. (Id. ¶ 10.) On October 15, 2013, S.K. had his due process hearing with a hearing officer representing the ODR. (Id. ¶ 11.) On November 17, 2013, the hearing officer issued a decision. (Id. ¶ 11.) The hearing officer determined found that the District did not deny S.K. the benefit of District's programming on the basis of his disability. (Id.) On February 18, 2014, K.K., on behalf of S.K., filed the complaint in this case alleging that the hearing officer's decision erroneously analyzed the issue under the deliberate indifference standard, which is appropriate only for claims of compensatory damages. (Id.)

**IV. Standard of Review**

A motion to dismiss tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383,

388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 667 (citing Twombly, 550 U.S. at 556).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.…Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 667 (quoting Twombly, 550 U.S. at 556. Two working principles underlie Twombly. Iqbal, 556 U.S. at 667. First, with respect to mere conclusory statements, a court need not accept as true all the allegations contained in a complaint. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Second, to survive a motion to dismiss, a claim must state a plausible claim for relief. Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id.

(quoting FED. R. CIV. P. 8(a)(2)). A court considering a motion to dismiss may begin by identifying pleadings that are not entitled to the assumption of truth because they are mere conclusions.

> While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 664.

The court may grant a plaintiff leave to amend a complaint under Federal Rule of Civil Procedure 15, which provides: "The court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15. Rule 15, however, "does not permit amendment when it would be futile. Futility 'means that the complaint, as amended, would fail to state a claim upon which relief could be granted.'" Kenny v. United States, 489 F. App'x 628, 633 (3d Cir. 2012) (citing Burtch v. Millberg Factors, Inc., 662 F.3d 212, 231 (3d Cir. 2011)). "The standard for deciding whether claims are futile for the purpose of granting leave to amend a complaint is the same as a motion to dismiss." Markert v. PNC Fin. Servs. Grp., Inc., 828 F. Supp. 2d 765, 771 (E.D. Pa. 2011). "[I]f the court determines that plaintiff has had multiple opportunities to state a claim but has failed to do so, leave to amend may be denied." See 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 2010).

### V. Discussion

#### A. Motion to Dismiss

##### 1. Applicable Law

The Rehabilitation Act[2] provides:

---

2   A recipient of federal funds that operates a public elementary or secondary education program:

> No otherwise qualified individual with a disability in the United States,…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance….

29 U.S.C. § 794 ("Section 504"). The ADA provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

The Rehabilitation Act and the ADA "embody the negative prohibition against depriving disabled students of public education[,]" and "prohibit and provide a remedy for discrimination." CG v. Pennsylvania Dep't of Educ., 734 F.3d 229, 234 (3d Cir. 2013). The Third Circuit Court of Appeals in CG, explained:

> With limited exceptions, the same legal principles govern ADA and RA claims. To prove a claim under either the ADA or RA, Plaintiffs must show that: (1) they are handicapped or disabled as defined under the statutes; (2) they are otherwise qualified to participate in the program at issue; and (3) they were precluded from participating in a program or receiving a service or benefit because of their disability. Chambers ex rel. Chambers, 587 F.3d at 189.

---

shall provide non-academic and extracurricular services and activities in such manner as is necessary to afford handicapped students an equal opportunity for participation in such services and activities.

34 C.F.R. § 104.37(a)(1). Nonacademic and extracurricular services and activities may include: counseling services, physical recreational athletics, *transportation*, health services, recreational activities, special interest groups or clubs sponsored by the recipients, referrals to agencies which provide assistance to handicapped persons, and employment of students, including both employment by the recipient and assistance in making available outside employment.

Id. at § 104.37(a)(2) (emphasis added). Accordingly, a school district may not discriminate against a disabled student in the provision of transportation with respect to nonacademic services, meaning the school district must afford disabled and nondisabled students an equal opportunity to receive transportation for nonacademic purposes.

CG, 734 F.3d at 235. The pleading requirements under the Rehabilitation Act and the ADA are the same except that an ADA claim does not need to show that the school receives federal funds. Id. at 235 n.10. Another of the "limited exceptions" referred to by the court in CG is the standard of proof with respect to causation. Id. The court in CG explained: "The [Rehabilitation Act] allows a plaintiff to recover if he or she were deprived of an opportunity to participate in a program solely on the basis of disability, while the ADA covers discrimination on the basis of disability, even if there is another cause as well." Id.

> To satisfy either causation requirement, Plaintiffs must prove that they were treated differently based on the protected characteristic, namely the existence of their disability….because the "main thrust" of the ADA and RA "is to assure handicapped individuals receive the same benefits as the non-handicapped,"…as well as to prohibit discrimination against one "subgroup" of disabled people as compared to another subgroup if the characteristic distinguishing the two subgroups is the nature of their respective disability.

Id. at 235-36 (quoting Easley v. Snider, 36 F.3d 297, 305 (3d Cir. 1994)).

With respect to the second element of the prima facie case, i.e., whether a disabled individual is "otherwise qualified," the Third Circuit Court of Appeals has recognized: "The inquiry into whether an applicant is otherwise qualified necessarily involves a determination of whether the applicant could have gained access to the program if the recipient of funds had made reasonable accommodations." Wagner by Wagner v. Fair Acres Geriatric Ctr., 49 F.3d 1002, 1014 (3d Cir. 1995). The court of appeals explained:

> In Southeastern Community College v. Davis, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), the Supreme Court held that an "otherwise qualified" handicapped individual is one who can meet all of a program's requirements in spite of his handicap. Id. at 406, 99 S.Ct. at 2368. Significantly, the Court indicated that an individual may be otherwise qualified in some instances even though he cannot meet all of a program's requirements. In Strathie, we observed that "this is the case when the refusal to modify an existing program would be unreasonable and thereby discriminatory." 716 F.2d at 230.

Id. at 1009. To determine whether an accommodation is "reasonable," the court must consider two factors: (1) whether the accommodation "necessitate[s] modification of the essential nature of the program[;]" and (2) whether the accommodation "place[s] undue burdens, such as extensive costs, on the recipient of federal funds." Id. (citing Se. Cmty. College v. Davis, 44 U.S. 397, 412 (1979); Strathie v. Dep't of Transp., 716 F.2d 227, 230 (3d Cir. 1983); Easley by Easley v. Snider, 36 F.3d 297, 302 (3d Cir. 1994)). If the court determines that the accommodation does not modify the essential nature of the program or place undue burdens on the recipient of federal funds, the accommodation is reasonable, and, the disabled individual is "otherwise qualified" to participate in the program or service offered by the recipient of federal funds. Wagner, 49 F.3d at 1009 (citing Easley, 36 F.3d at 302). In other words, "in looking at whether an individual is otherwise qualified, [the court] must analyze whether the person would be otherwise qualified if reasonable accommodations are made for his/her handicap." Wagner, 49 F.3d at 1009 (citing Alexander v. Choate, 469 U.S. 287, 301 (1985)).[3]

---

[3] The Court of Appeals for the Seventh Circuit has held that based upon the Supreme Court's decisions relied upon by the Third Circuit Court of Appeals in Wagner, i.e., Davis and Alexander, a plaintiff under the Rehabilitation Act or the ADA may assert a claim for discrimination based upon evidence that: "(1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people." Washington v. Indiana High Sch. Athletic Ass'n, Inc., 181 F.3d 840, 847 (7th Cir. 1999) (citing McPherson v. Mich. High Sch. Athletic Ass'n, 119 F.3d 453 (6th Cir. 1997)); see A Helping Hand, LLC v. Baltimore Cnty., Md., 515 F.3d 356, 362 (4th Cir. 2008) ("Thus, courts have construed Title II of the ADA to allow a plaintiff to pursue three distinct grounds for relief: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations.") (citing Wisconsin Cmty. Servs., Inc. v. Milwaukee, 465 F.3d 737, 753 (7th Cir. 2006); Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565, 580 (2d Cir. 2003)).

The court in Starego v. N.J. State Interscholastic Athletic Ass'n, 970 F.Supp.2d 303, 309 (D.N.J. 2013), explained:

> With that framework in mind, I next turn to the elements of an ADA claim under Title II. To prevail on such a claim, a plaintiff must prove that (a) he has a disability within the meaning of the ADA, (b) he is otherwise qualified, with or without reasonable accommodations, to receive services or participate in

## 2. Analysis

Because S.K.'s claims arising under the Rehabilitation Act and the ADA are governed by the same legal standards *with limited exception*, those claims will be jointly discussed herein—unless otherwise noted. Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009) ("Because the same standards govern both the Chambers' RA and ADA claims, we may address both claims in the same breath."); S.H. ex rel. Durrell v. Lower Merion School Dist., 729 F.3d 248, 260 (3d Cir. 2013) ("The same standards govern both the RA and the ADA claims."). The parties in this case agree that: (1) S.K. is disabled within the meaning of the Rehabilitation Act and ADA; and (2) the District receives federal financial assistance. (ECF No. 10 at 7; ECF No. 20 at 4.) The parties dispute the other two elements of the prima facie case, i.e., whether S.K. was *otherwise qualified* to receive the transportation or was excluded from participating in, or denied the benefit of, transportation *because of his disability*. (Id.)[4] Upon review of the parties' submissions and the applicable law, the dispositive issue in this case is not whether S.K. was excluded from participating in, or denied the benefit of, transportation *because*

---

programs or activities provided by his school, (c) he, by reason of his disability, was denied the benefits of, or excluded from participation in, such services, programs, or activities, or was discriminated against by the defendant, and (d) the defendant was a public entity within the meaning of Title II of the ADA.
Starego, 970 F.Supp.2d at 309.

[4] Whether a recipient of federal funds has discriminated against a disabled person because of his or her disability and whether the disabled person is otherwise qualified are related issues. The Supreme Court in Alexander explained:
> [T]he question of who is "otherwise qualified" and what actions constitute "discrimination" under the section would seem to be two sides of a single coin; the ultimate question is the extent to which a grantee is required to make reasonable modifications in its programs for the needs of the handicapped.

Alexander, 469 U.S. at 720 n.19.

*of his disability*; rather, the dispositive issue is whether the transportation was for the benefit of S.K., i.e., whether S.K. was denied *any benefit at all*.

Under the Rehabilitation Act and the ADA, the District is prohibited from denying S.K. the benefits of its services. 28 C.F.R. § 35.1309(a); 42 U.S.C. § 12132. The nonacademic service provided by the District in this case is *transportation* between daycare facilities in the District and schools attended by students who are part of the District. Accordingly, to survive the District's motion to dismiss, the complaint must contain well-supported factual allegations that S.K. was *denied the benefits* of the transportation service. The factual allegations in the complaint, however, establish that K.K.—and not S.K.—was deprived of the benefits of the District's transportation service; indeed, the complaint provides that "S.K. began attending Child's Way in 2011 so that his mother K.K. could work." (ECF No. 1 ¶ 18.) In other words, the only reason S.K. required transportation between Child's Way and WPSB is because of K.K.'s employment needs. S.K. in the complaint does not identify any benefit of which *he* is being deprived by the District's refusal to transport him between Child's Way and WPSB.[5] S.K. in his

---

[5] In Wagner, the disabled plaintiff had Alzheimer's disease and sought admission to a nursing home facility. Wagner, 49 F.3d at 1004. The facility denied plaintiff admission because of her disability. The district court determined, however, that the disabled plaintiff was not otherwise qualified for admittance into the facility because she "sought admission to [the facility] because of her handicap and not in spite of her handicap." Id. at 1009-10. The court of appeals rejected the district court's reasoning, explaining that "[i]t is irrelevant why a plaintiff sought access to a program, service or institution; our concern, for purposes of section 504, is why a plaintiff is denied access to a program, service or institution." Wagner, 49 F.3d at 1010.

S.K. argues that based upon this quote from Wagner, "it is clear that S.K. and K.K.'s reason for seeking access to the daycare transportation program would not obviate the District's obligation to determine whether S.K. is "otherwise qualified" for the program with or without reasonable accommodation." (ECF No. 30 at 5-6.) It was undisputed in Wagner, however, that the disabled plaintiff was denied the benefit of admission the facility. As discussed above, S.K.'s claims under the Rehabilitation Act and ADA fail not because of the *reason* S.K. needed transportation, but because it was not for his *benefit*. In accordance with Wagner, if, in this case, S.K. benefitted from the District's transportation service, it would be irrelevant *why* he requested the service; otherwise, S.K.'s reliance on this quote from Wagner is misplaced.

second supplemental brief argues that he benefits from the transportation service because "it allows him access to the daycare service that he needs as well as to his education program that is guaranteed to him through the terms of his IEP." (ECF No. 30 at 8.) The only reason S.K. requires care from Child's Way, however, is because K.K. wants to work. In other words, the benefit of the transportation is for K.K. The parties do not dispute that the District would provide S.K. access to his educational program because it would transport him between his home and WPSB, which it is required to do by S.K.'s IEP. The parties also do not dispute that, if S.K.'s attendance at Child's Way was part of his IEP, the District would have provided transportation to S.K. between Child's Way and WPSB. Based upon the allegations in the complaint—which the court must accept as true—S.K. is not being "denied the benefits of the services" provided by the District. Accordingly, S.K. in the complaint has not set forth a plausible claim for relief under the Rehabilitation Act or the ADA. Accordingly, the District's motion to dismiss will be granted with respect to the claims asserted by S.K. against the District.

### B. Request for Leave to Amend[6] to Permit K.K. to Assert Claims on Her Behalf[7]

#### 1. Applicable Law

The Third Circuit Court of Appeals has recognized that "[s]tanding is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution." <u>Pub. Int. Research Grp. Of N.J., Inc. v. Magnesium Elektron, Inc.</u>, 123 F.3d 111, 117 (3d Cir. 1997) (citing <u>Valley Forge Christian College v. Americans United for Separation of</u>

---

[6] S.K. did not file a motion for leave to amend with the court. In S.K.'s supplemental briefing with respect to the District's motion to dismiss, S.K. requested leave to amend the complaint.

[7] S.K. in the briefing only requested leave to amend the complaint with respect to adding K.K. as a plaintiff in her own right. There was no request to amend with respect to S.K.'s claims against the District.

Church and State, 454 U.S. 464, 471-73 (1982)). "Plaintiffs must have standing at all stages of the litigation,…and they bear the burden of proving it 'with the manner and degree of evidence required at the successive stages of the litigation.'" Magneisum Elekton, 123 F.3d at 117 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). In order to have Article III standing, a plaintiff must have: (1) suffered an injury-in-fact; (2) that is fairly traceable to defendant's challenged actions; and (3) that is likely redressable by a favorable decision. Id. at 560-61.

> In addition to constitutional standing limitations, the Supreme Court has identified several prudential limitations, including the requirement that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (citations omitted). However, "Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules." Id. at 501, 95 S.Ct. 2197. Where Congress grants a right of action to an entity or association, the entity may assert standing either in its own right or on behalf of its members. Id. at 511, 95 S.Ct. 2197.

Addiction Specialists, Inc. v. The Township of Hampton, 411 F.3d 399 (3d Cir. 2005).

> Under the Rehabilitation Act and the ADA:
>
> A public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.

28 C.F.R. § 35.130. The Third Circuit Court of Appeals in Addiction Specialists discussed a nondisabled person's right to sue, i.e., standing, under the Rehabilitation Act and ADA. The court of appeals explained:

> As the Second and Sixth Circuits have pointed out, the enforcement provisions of the ADA and RA do not limit relief to "qualified individuals with disabilities." MX Group, Inc. v. City of Covington, 293 F.3d 326, 334–35 (6th Cir.2002); Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37, 47 (2d Cir.1997). Rather, the ADA grants the right to relief to "any person alleging discrimination on the basis of disability," 42 U.S.C. § 12133, and the RA extends

14

> remedies to "any person aggrieved" by unlawful discrimination, 29 U.S.C. § 794a(a)(2).

Id. at 405-06.

### 2. Analysis

Based upon the foregoing, if K.K. can satisfy her burden to show that she has constitutional standing, she may, as a "person aggrieved," have standing to sue for her *own* injuries sustained by the District denying her the *benefit* of transporting S.K. between Child's Way and WPSB because of S.K.'s disability. According to the factual allegations in the complaint, the District transported students in the District between their daycares located within the District and schools, and K.K could not take advantage of this service because Child's Way is located outside the District and is the only daycare that could accommodate S.K.'s disabilities. In other words, the District denied K.K. the benefits of its transportation service. The court at this stage cannot tell based upon the complaint and the parties' submissions exactly what injuries K.K. may have or whether she can satisfy the disputed elements of the prima facie case under the Rehabilitation Act or the ADA, i.e., K.K. was otherwise qualified to participate in the transportation service and was precluded from receiving the benefit of the transportation service because of S.K.'s disability. It is also unclear whether a nondisabled plaintiff asserting an associational discrimination claim against a recipient of federal funds can base his or her claim upon the recipient's failure to provide reasonable accommodations to the nondisabled plaintiff. See Erdman v. Nationwide Ins. Co., 582 F.3d 500, 510 (3d 2009) (holding that in the employment context, "the plain language of the ADA indicates that the accommodation requirement does not extend to relatives of the disabled"). Because these issues remain to be resolved, the parties' submissions do not fully address these issues, and there was no proposed amended complaint submitted, the court cannot determine whether amendment would be futile.

S.K.'s request for leave to amend to add K.K. as a plaintiff in her own right will be denied without prejudice. In the interest of justice, within thirty days of the entry of this opinion and accompanying order, plaintiff is permitted to file a motion for leave to file an amended complaint naming K.K. as a plaintiff in her own right. Plaintiff must attach the proposed amended complaint to the motion for leave to amend. K.K. and the District will then have the opportunity to address whether K.K. set forth factual allegations sufficient to state a plausible claim for associational discrimination under the Rehabilitation Act and ADA.

## VI. Conclusion

For the forgoing reasons, the District's Rule 12(b)(6) motion to dismiss (ECF No. 9) is GRANTED with respect to S.K.'s claims against the District. S.K.'s request for leave to amend the complaint to add K.K. as a plaintiff in her own right is DENIED without prejudice. Plaintiff within thirty days of the entry of this opinion and accompanying order is permitted to file a motion for leave to file an amended complaint naming K.K. as a plaintiff in her own right. Plaintiff must attach the proposed amended complaint to the motion for leave.

An appropriate order will be entered.

BY THE COURT,

Dated: March 20, 2015

/s/ *Joy Flowers Conti*
Joy Flowers Conti
Chief United States District Judge