**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| S.K., a minor, by his parent, K.K., and K.K., | ) |
| | ) |
| | ) **Civil Action No. 14-218** |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| NORTH ALLEGHENY SCHOOL DISTRICT, | ) |
| | ) |
| | ) |
| Defendant. | ) |

<u>OPINION</u>

**CONTI, Chief District Judge**

## I.  Introduction

Pending before the court is a motion for leave to file an amended complaint (ECF No. 34) filed by plaintiff K.K. on her own behalf and on the behalf of her severely disabled minor child, S.K. K.K. and S.K. in the proposed amended complaint allege that defendant North Allegheny School District (the "District") violated their rights under § 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 701, et seq., 34 C.F.R. § 104.4, Chapter 15 of the Pennsylvania Code, 22 Pa. Cons. Stat. § 15 ("Chapter 15"),[1] and Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12132.

The District provides a service transporting its students between their schools and respective daycare facilities located within the District's attendance boundaries (the

---

[1]  "Pennsylvania has 'implement[ed] the statutory and regulatory requirements of § 504' at the state level through the enactment of Chapter 15." <u>K.K. ex rel. L.K. v. Pittsburgh Pub. Sch.</u>, 590 F. App'x 148, 153 n.3 (3d Cir. 2014) (quoting 22 Pa. Cons. Stat. § 15.1). "Because Chapter 15 does not preempt or expand the rights and liabilities under Section 504, the court will treat Chapter 15 as coextensive with Section 504." <u>A.W. ex rel. H.W. v. Middletown Area Sch. Dist.</u>, Civ. Action No. 13-2379, 2015 WL 390864, at *15 (M.D. Pa. Jan. 28, 2015); <u>K.K.</u>, 590 F. A'ppx at 153 n.3.

"transportation service"). K.K. and S.K. allege that the only daycare able to care for S.K.'s medical needs, i.e., Child's Way, is located outside the District's attendance boundaries, and the District refused to transport S.K. between Child's Way and his school, the Western Pennsylvania School for Blind Children. ("WPSB"). According to S.K. and K.K., the District's failure to reasonably modify its transportation service and transport S.K. between Child's Way and the WPSB is discrimination under the Rehabilitation Act, Chapter 15, and the ADA. K.K. and S.K. seek to file an amended complaint to assert their rights against the District under those antidiscrimination laws. The District argues, however, that the court should not permit K.K. and S.K. to file an amended complaint because K.K. does not have standing under Article III of the United States Constitution and the court did not permit S.K. to file a motion for leave to file an amended complaint.

This case presents heart wrenching facts about a mother's efforts to provide care for and resources to her severely disabled son. The issues raised in this case are emotional and difficult. For the reasons set forth below, S.K. in the proposed amended complaint did not set forth a plausible claim for relief because the District did not deny him any benefit to which he is entitled. K.K., however, set forth a plausible claim for relief based upon her association with her disabled son. The motion for leave to file an amended complaint will, therefore, be granted with respect to K.K.'s claims and denied with respect to S.K.'s claims.

## II.    Procedural History

This civil action was initiated on February 18, 2014, when K.K. filed a complaint on S.K.'s behalf requesting injunctive relief and compensatory education to remedy the

failure of the District to provide transportation between S.K.'s daycare, Child's Way, and S.K.'s school, WPSB ("WPSB"). (ECF No. 1 ¶¶ 3, 10, 17, 18.) According to the complaint, S.K. was denied access to a federally funded program, i.e., the District's transportation service, because of his disability. (Id. ¶¶ 27-40.) Based upon these core factual allegations, S.K. in the complaint asserted claims under the Rehabilitation Act, Chapter 15, and the ADA. (Id. ¶ 1.)

On March 18, 2014, the District filed a motion to dismiss S.K.'s complaint and a brief in support of its motion. (ECF Nos. 9, 10.) On April 15, 2014, S.K. filed a brief in opposition to the District's motion to dismiss. (ECF No. 19.) On June 5, 2014, the court held a hearing on the District's motion to dismiss and determined that supplemental briefing was necessary to resolve the motion to dismiss. On July 7, 2014, the District filed a supplemental brief, (ECF No. 26), and on August 6, 2014, S.K. filed his supplemental brief in opposition. (ECF No. 27.) On August 22, 2014, the court held a hearing with respect to the supplemental briefing and requested that the parties file second supplemental briefs. On October 3, 2014, S.K. filed his second supplemental brief (ECF No. 30), and on October 31, 2014, the District filed its second supplemental brief (ECF No. 31). On January, 22, 2015, the court held a hearing on the second supplemental briefing and advised the parties that the District's motion to dismiss would be granted. On March 20, 2015, the court issued an opinion and order granting the District's motion to dismiss. (ECF Nos. 32 and 33.) The court granted the motion to dismiss because S.K. did not plausibly allege that the District denied him any benefit to which he was entitled. In their brief in opposition to the motion to dismiss and second supplemental brief in opposition to the motion to dismiss, K.K. and S.K. requested leave

3

to amend. (ECF No. 20 at 12; ECF No. 30 at 8.) The court denied S.K.'s request for leave to amend, but permitted K.K. to file a motion for leave to file an amended complaint in her own right. (Id.)

On April 20, 2015, S.K. and K.K. filed a joint motion for leave to file an amended complaint and brief in support of the motion. (ECF Nos. 34 and 35.) S.K. and K.K. attached the proposed amended complaint to the motion for leave to amend. The proposed amended complaint names S.K. and K.K. as plaintiffs, sets forth the same claims asserted by S.K. in the original complaint, and sets forth similar claims on behalf of K.K. According to S.K. and K.K., in the amended complaint they set forth allegations that under the relevant laws, the District deprived S.K. of various benefits owed to him and K.K. is a person aggrieved who was directly injured by the District's conduct. (ECF No. 34-1.)

On April 20, 2015, S.K. appealed the court's order granting the District's motion to dismiss. (ECF No. 36.) On May 11, 2015, the District filed a response and brief in opposition to the motion for leave to file an amended complaint. (ECF Nos. 39 and 40.) On March 27, 2015, the Court of Appeals for the Third Circuit stayed the appeal of the court's order granting the District's motion to dismiss pending a decision by this court on the motion for leave to file an amended complaint. (ECF No. 41.) On June 12, 2015, S.K. and K.K. filed a reply brief in support of the motion for leave to file an amended complaint. (ECF No. 43.) The motion for leave to file an amended complaint is now ripe to be decided by the court.

**III. Factual Allegations Set Forth in the Proposed Amended Complaint and Viewed as True for the Purpose of Deciding the Motion to Dismiss**

## A. Background

S.K. is a seven-year-old student within the District. (ECF No. 34-1 ¶ 13.) S.K. has a disability due to a diagnosis of Cornelai de Lange Syndrome that causes S.K. to be blind, deaf, and incapable of basic self-care, such as feeding and toileting. (Id. ¶¶ 4, 13.) S.K. also has significant speech and language delays, cognitive impairments, social interaction skills deficits, attention deficit, gross and fine motor delays, and other adaptive needs. (Id. ¶ 13.) At all relevant times, S.K. was recognized as a protected handicapped student, pursuant to § 504 of the Rehabilitation Act, and qualified to receive an equal opportunity to participate in nonacademic and extracurricular services and activities that are provided to his nondisabled peers, in accordance with the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., and Chapter 14 of the Pennsylvania Department of Education Regulations, 22 PA. CODE § 14.101 et seq. (Id. ¶ 14.)

In 2011, S.K. began attending Child's Way, a daycare for children with special medical needs, so that K.K. could work. (ECF No. 34-1 ¶ 18.) Child's Way maintains a staff of registered nurses and childcare associates.(Id.) Prior to S.K. attending Child's Way, and on other subsequent occasions, K.K. contacted all daycare centers within the District's boundaries to ascertain their ability to meet S.K.'s medical needs. (Id. ¶ 19.) All daycare facilities contacted lacked the needed medical and nursing support offered by Child's Way. (Id. ¶ 19.)

In March 2012, S.K. was enrolled in the District to attend kindergarten. (ECF No. 34-1 ¶ 15.) On July 26, 2012, in accordance with the IDEA, the District conducted an evaluation of S.K. (Id. ¶ 16.) The District concluded that S.K. required full-time visually

impaired and hearing impaired support. (Id.) S.K. was issued an Individualized Education Program ("IEP"), pursuant to the IDEA, according to which the appropriate placement for S.K. was at WPSB. (Id. ¶ 17.)

## B. S.K.'s Medical Needs and the District's Transportation Service

The District transports students between their school and their respective daycare facilities located within the District's attendance boundaries. (ECF No. 34-1 ¶ 20.) K.K. requested that the District provide transportation for S.K. between WPSB and Child's Way. (Id. ¶ 21.) The District transports two other students from the District's attendance zone to WPSB. (Id. ¶ 22.) Child's Way is located 1.69 to 1.78 miles from WPSB. (Id.) To support her request, K.K. provided the District with a letter dated July 28, 2011, from Dr. Brian Kilpela, M.D., providing that S.K. is not able to attend a "regular" daycare and that the type of care S.K. receives at Child's Way "is medically necessary due to his conditions." (Id. ¶ 23.) K.K. also provided the District with correspondence from Erin Colvin ("Colvin"), a board certified pediatric nurse practitioner and Clinical Director of Child's Way. (Id. ¶ 24.) Colvin asserted in the correspondence that Child's Way is a good option for many medically fragile children "due to their consistent nursing care, whereas there is a risk of call-offs and inconsistent schedules with home nursing care." and requested "that [S.K.] and his mother be afforded the same opportunity [as other children in the District are given], but in a setting where nurses can give [S.K.] the medical care that he requires." (Id.) The District refused to provide S.K. transportation between Child's Way and the WPSB because Child's Way is located outside of the attendance boundaries of the district. (Id. ¶ 25.) Due to the lack of transportation between Child's Way and WPSB, and K.K.'s inability to

arrange private transportation, S.K. did not attend school for the 2012-2013 and 2013-2014 school years. (Id. ¶ 26.)

S.K. asserts that the District discriminated against him by denying him an equal opportunity to participate in the nonacademic and extracurricular transportation service. (ECF No. 34-1 ¶ 28.) S.K. alleges that school districts are required to provide handicapped students with aids, services and accommodations that are designed to meet the educational needs of a protected handicapped student. (Id. ¶ 35.) These accommodations may include, but, are not limited to, special transportation. (Id. ¶ 35.) S.K. asserts that since August 2012, the District has discriminated against him by failing to reasonably accommodate his need for transportation service between his school and his daycare facility, Child's Way, a service that the District provides to S.K.'s nondisabled peers. (Id. ¶¶ 31, 40.)

On August 19, 2013, K.K., on behalf of S.K., filed a request for an administrative due process hearing with the Office for Dispute Resolution ("ODR') alleging, among other things, that the District violated § 504 of the Rehabilitation Act and Chapter 15 of the Pennsylvania Code by denying S.K. the benefit of the transportation service between Child's Way and WPSB. (ECF No. 34-1 ¶¶ 10, 19.) S.K. sought injunctive relief and compensatory education. (Id. ¶ 10.) On October 15, 2013, S.K. had a due process hearing with a hearing officer representing the ODR. (Id. ¶ 11.) On November 17, 2013, the hearing officer issued a decision. (Id.) The hearing officer determined that the District did not deny S.K. the benefit of District's programming on the basis of his disability. (Id.) On February 18, 2014, K.K., on behalf of S.K., filed the original complaint in this case alleging that the hearing officer's decision erroneously analyzed

the issue under the deliberate indifference standard, which is appropriate only for claims of compensatory damages. (Id.)

## C. Harm to K.K. and S.K. as a Result of the District's Failure to Provide Reasonable Modifications

The District's refusal to provide reasonable modifications to its transportation service forces K.K. to choose between working and having her son, S.K, attend school and receive an education. (ECF No. 34-1 ¶ 27.) Parents of children without medical needs like S.K.'s needs do not have to choose between working and having their children attend school because the District's transportation policy accommodates their children in regular daycare settings. (Id.) In order for K.K. to participate in the District's transportation service, she *could* choose S.K.'s education over his safety and place him in a daycare facility within the school district attendance zone that is incapable of meeting his medical needs. (Id. ¶ 28.) Other parents who avail themselves of the District's program are not forced to choose between their children's safety and education. (Id.)

If K.K. chooses to stop working so that S.K. can attend school:

- S.K. and K.K. will be harmed because they will lose K.K.'s income, which pays for their everyday necessitates, e.g., rent, groceries, clothing and utilities (ECF No. 34-1 ¶ 29);

- K.K. will be forced to seek welfare benefits to pay for S.K.'s and K.K.'s everyday living expenses, and "they both will bear the associated negative stigma of receiving public benefits rather than earning a salary" (Id. ¶ 30);

- K.K. will be deprived of the opportunity to pursue her career goals of working as a paralegal and seek long-term financial stability (Id ¶ 31); and

- K.K. will be deprived of the self-respect, pride and sense of accomplishment she derives from her career. (Id. ¶ 32.)

Parents of typically-developing children in the District can pursue their vocational goals, seek self-sufficiency, and obtain personal satisfaction through meaningful employment without having to forsake their child's education or safety. (Id. ¶¶ 29-32.) The District's actions caused K.K. significant stress and emotional suffering; indeed, in 2012 and continuing through the date of the amended complaint, K.K. sought private therapy services. (ECF No. 34-1 ¶ 32.) By working and pursuing her career goals, K.K. "is furthering an important public policy goal – the 'end [of] the dependence of needy parents on government benefits by promoting job preparation [and] work.'" (Id. ¶ 33 (quoting 42 U.S.C. 601(a)(2).)

S.K. is prejudiced by the District's transportation policy because "he will fail to receive the educational benefit of having his single mother K.K. work." (ECF No. 34-1 ¶ 34.) K.K. and S.K. allege:

> As found in a recent, comprehensive survey of studies on this matter, "the achievement of children in families with only one parent, who is usually both primary caregiver and breadwinner, appears to benefit from the increased economic resources." Wendy A. Goldberg, et al. Maternal Employment and Children's Achievement in Context: A Meta-Analysis of Four Decades of Research, 134 Psychological Bulletin 1, 77-108 (2008).

(Id.)

## IV.    Standard of Review

The court may grant a plaintiff leave to amend a complaint under Federal Rule of Civil Procedure 15, which provides: "The court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15. Rule 15, however, "does not permit amendment when it would be futile. Futility 'means that the complaint, as amended, would fail to state a claim upon which relief could be granted.'" Kenny v. United States, 489 F. App'x 628, 633 (3d Cir. 2012) (citing Burtch v. Millberg Factors, Inc., 662 F.3d 212, 231 (3d

Cir. 2011)). "The standard for deciding whether claims are futile for the purpose of granting leave to amend a complaint is the same as a motion to dismiss." <u>Markert v. PNC Fin. Servs. Group, Inc.</u>, 828 F. Supp. 2d 765, 771 (E.D. Pa. 2011). "[I]f the court determines that plaintiff has had multiple opportunities to state a claim but has failed to do so, leave to amend may be denied." <u>See</u> 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed. 2010).

A motion to dismiss tests the legal sufficiency of the complaint. <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. <u>U.S. Express Lines Ltd. v. Higgins</u>, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> (citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 667 (citing <u>Twombly</u>, 550 U.S. at 556).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully....Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 667 (quoting Twombly, 550 U.S. at 556. Two working principles underlie Twombly. Iqbal, 556 U.S. at 667. First, with respect to mere conclusory statements, a court need not accept as true all the allegations contained in a complaint. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Second, to survive a motion to dismiss, a claim must state a plausible claim for relief. Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)). A court considering a motion to dismiss may begin by identifying pleadings that are not entitled to the assumption of truth because they are mere conclusions.

> While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 664.

## V. Discussion

### A. Applicable Law—the Rehabilitation Act and the ADA

### 1. Claims asserted by <u>disabled</u> individuals

The Rehabilitation Act[2] provides:

> No otherwise qualified individual with a disability in the United States,...shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794 ("Section 504"). Title II of the ADA provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. The Rehabilitation Act and the ADA "embody the negative prohibition against depriving disabled students of public education[,]" and "prohibit

---

[2]    A recipient of federal funds that operates a public elementary or secondary education program:

> shall provide non-academic and extracurricular services and activities in such manner as is necessary to afford handicapped students an equal opportunity for participation in such services and activities.

34 C.F.R. § 104.37(a)(1). Nonacademic and extracurricular services and activities may include:

> counseling services, physical recreational athletics, *transportation*, health services, recreational activities, special interest groups or clubs sponsored by the recipients, referrals to agencies which provide assistance to handicapped persons, and employment of students, including both employment by the recipient and assistance in making available outside employment.

<u>Id.</u> at § 104.37(a)(2) (emphasis added). Accordingly, a school district may not discriminate against a disabled student in the provision of transportation with respect to nonacademic services, meaning the school district must afford disabled and nondisabled students an equal opportunity to receive transportation for nonacademic purposes.

and provide a remedy for discrimination." <u>CG v. Pa. Dep't of Educ.</u>, 734 F.3d 229, 234 (3d Cir. 2013). The Third Circuit Court of Appeals in <u>CG</u>, explained:

> With limited exceptions, the same legal principles govern ADA and RA claims. To prove a claim under either the ADA or RA, Plaintiffs must show that: (1) they are handicapped or disabled as defined under the statutes; (2) they are otherwise qualified to participate in the program at issue; and (3) they were precluded from participating in a program or receiving a service or benefit because of their disability. <u>Chambers ex rel. Chambers</u>, 587 F.3d at 189.

<u>CG</u>, 734 F.3d at 235. The pleading requirements under the Rehabilitation Act and the ADA are the same except that "under the RA, a plaintiff must show that the allegedly discriminating entity receives federal funding." <u>Id.</u> at 235 n.10. Another of the "limited exceptions" referred to by the court in <u>CG</u> is the standard of proof with respect to causation. <u>Id.</u> The court in <u>CG</u> explained: "The [Rehabilitation Act] allows a plaintiff to recover if he or she were deprived of an opportunity to participate in a program solely on the basis of disability, while the ADA covers discrimination on the basis of disability, even if there is another cause as well." <u>Id.</u>

> To satisfy either causation requirement, Plaintiffs must prove that they were treated differently based on the protected characteristic, namely the existence of their disability....because the "main thrust" of the ADA and RA "is to assure handicapped individuals receive the same benefits as the non-handicapped,"...as well as to prohibit discrimination against one "subgroup" of disabled people as compared to another subgroup if the characteristic distinguishing the two subgroups is the nature of their respective disability.

<u>Id.</u> at 235-36 (quoting <u>Easley v. Snider</u>, 36 F.3d 297, 305 (3d Cir. 1994)).

With respect to the second element of the prima facie case, i.e., whether a disabled individual is "otherwise qualified," the Third Circuit Court of Appeals has recognized: "The inquiry into whether an applicant is otherwise qualified necessarily involves a determination of whether the applicant could have gained access to the

program if the recipient of funds had made reasonable accommodations." <u>Wagner by Wagner v. Fair Acres Geriatric Ctr.</u>, 49 F.3d 1002, 1014 (3d Cir. 1995). The court of appeals explained:

> In <u>Southeastern Community College v. Davis</u>, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), the Supreme Court held that an "otherwise qualified" handicapped individual is one who can meet all of a program's requirements in spite of his handicap. <u>Id.</u> at 406, 99 S.Ct. at 2368. Significantly, the Court indicated that an individual may be otherwise qualified in some instances even though he cannot meet all of a program's requirements. In <u>Strathie</u>, we observed that "this is the case when the refusal to modify an existing program would be unreasonable and thereby discriminatory." 716 F.2d at 230.

<u>Id.</u> at 1009. To determine whether an accommodation is "reasonable," the court must consider two factors: (1) whether the accommodation "necessitate[s] modification of the essential nature of the program[;]" and (2) whether the accommodation "place[s] undue burdens, such as extensive costs, on the recipient of federal funds." <u>Id.</u> (citing <u>Se. Cmty. College v. Davis</u>, 44 U.S. 397, 412 (1979); <u>Strathie v. Dep't of Transp.</u>, 716 F.2d 227, 230 (3d Cir. 1983); <u>Easley by Easley v. Snider</u>, 36 F.3d 297, 302 (3d Cir. 1994)). If the court determines that the accommodation does not modify the essential nature of the program or place undue burdens on the recipient of federal funds, the accommodation is reasonable, and, the disabled individual is "otherwise qualified" to participate in the program or service offered by the recipient of federal funds. <u>Wagner</u>, 49 F.3d at 1009 (citing <u>Easley</u>, 36 F.3d at 302). In other words, "in looking at whether an individual is otherwise qualified, [the court] must analyze whether the person would be otherwise qualified if reasonable accommodations are made for his/her handicap." <u>Wagner</u>, 49 F.3d at 1009 (citing <u>Alexander v. Choate</u>, 469 U.S. 287, 301 (1985)).

## 2. Associational claims asserted by <u>nondisabled</u> individuals

A right to relief under the Rehabilitation Act and the ADA is not limited to disabled persons. "It is widely accepted that under both the RA and ADA, non-disabled individuals have standing to bring claims when they are injured because of their association with a disabled person." McCullum v. Orlando Regional Health-Care Sys., Inc., 768 F.3d 1135, 1142 (11th Cir. 2014) (citing Addiction Specialists, Inc. v. The Twp. of Hampton, 411 F.3d 399 (3d Cir. 2005)); Doe v. Cnty. of Centre Pa., 242 F.3d 437, 447 (3d Cir. 2001) ("The protections of the ADA extend to 'qualified individuals' who are discriminated against because of their relationship or association with individuals who have a known disability.").[3] A plaintiff asserting an associational discrimination claim under the Rehabilitation Act and Title II of the ADA must plausibly allege:

> (1) a logical and significant association with an individual with disabilities; (2) that a public entity knew of that association; (3) that the public entity discriminated against them because of that association; and (4) they suffered a direct injury as a result of the discrimination.

Schneider v. Cnty. of Will, 190 F.Supp.2d 1082, 1091 (N.D. Ill. 2002) (citing 28 C.F.R. § 35.130(g)).

---

[3]     The Third Circuit Court of Appeals has explained:

[T]he ADA grants the right to relief to "any person alleging discrimination on the basis of disability," 42 U.S.C. § 12133, and the RA extends remedies to "any person aggrieved" by unlawful discrimination, 29 U.S.C. § 794a(a)(2).

"Any person" may include individuals as well as entities. The regulations passed pursuant to the ADA specifically extend the protections of the Act to entities such as ASI. 28 C.F.R. § 35.130(g) ("A public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." (emphasis added)).

Addiction Specialists, 411 F.3d at 405-06.

A parent may be regarded as having the kind of relationship to his or her disabled child that permits him or her to assert an associational discrimination claim under the ADA. See e.g., Doe, 242 F.3d at 446-47 (permitting associational discrimination claims under Title II of the ADA by parents of an adopted child who was HIV-positive and noting "the protections found in the ADA and in the Rehabilitation Act are interpreted similarly, and, in this case, are identical."). A parent may, therefore, assert an associational discrimination claim against a school district if the school district discriminates against him or her because of his or her association with a disabled child. See e.g., Eskenazi-McGibney v. Connetquot Ctr. Sch. Dist., 84 F.Supp.3d 221, 230 (E.D. N.Y. 2015) (denying defendant's motion to dismiss because "the amended complaint alleges that RM and JM were denied access to Celaberti and to the school grounds based on their association with JEM, their son with a disability").

### B. Claims Asserted by S.K.

The court granted the District's motion to dismiss the original complaint because based upon the allegations in the original complaint, the District did not deny S.K. any benefit to which he was entitled when it refused to transport him between Child's Way and the WPSB. The court explained:

> Under the Rehabilitation Act and the ADA, the District is prohibited from denying S.K. the benefits of its services. 28 C.F.R. § 35.1309(a); 42 U.S.C. § 12132. The nonacademic service provided by the District in this case is transportation between daycare facilities in the District and schools attended by students who are part of the District. Accordingly, to survive the District's motion to dismiss, the complaint must contain well-supported factual allegations that S.K. was denied the benefits of the transportation service. The factual allegations in the complaint, however, establish that K.K.—and not S.K.—was deprived of the benefits of the District's transportation service; indeed, the complaint provides that "S.K. began attending Child's Way in 2011 so that his mother K.K. could work." (ECF No. 1 ¶ 18.) In other words, the only reason S.K. required

transportation between Child's Way and WPSB is because of K.K.'s employment needs.

> S.K. in the complaint does not identify any benefit of which he is being deprived by the District's refusal to transport him between Child's Way and WPSB. S.K. in his second supplemental brief argues that he benefits from the transportation service because "it allows him access to the daycare service that he needs as well as to his education program that is guaranteed to him through the terms of his IEP." (ECF No. 30 at 8.) The only reason S.K. requires care from Child's Way, however, is because K.K. wants to work. In other words, the benefit of the transportation is for K.K.

(ECF No. 32 at 12-13.) The court for the foregoing reasons dismissed S.K.'s complaint, and did not grant S.K. leave to file a motion for leave to file an amended complaint. (Id. at 13 n.7.)

> S.K. in the proposed amended complaint alleges:

> S.K. is further prejudiced by the District's policy because he will fail to receive the educational benefit of having his single mother K.K. work. As found in a recent, comprehensive survey of studies on this matter, "the achievement of children is families with only one parent, who is usually both primary caregiver and breadwinner, appears to benefit from the increased economic resources." Wendy A. Goldberg, et al. Maternal Employment and Children's Achievement in Context: A Meta-Analysis of Four Decades of Research, 134 Psychological Bulletin 1, 77-108 (2008).

(ECF No. 34-1 ¶ 34.) This allegation does not identify a benefit owed to S.K. that the District withheld from him. The District does not provide its students the "educational benefit" of having their parents work. The District provides transportation between daycare facilities in the District and schools attended by students who reside in the District. The District does not control whether a parent is employed; indeed, a parent might utilize the transportation service and choose not to work. If transportation to Child's Way provided an *educational* benefit to S.K., it should have been included in S.K.'s IEP. As this court previously noted:

The parties do not dispute that the District would provide S.K. access to his educational program because it would transport him between his home and WPSB, which it is required to do by S.K.'s IEP. The parties also do not dispute that, if S.K.'s attendance at Child's Way was part of his IEP, the District would have provided transportation to S.K. between Child's Way and WPSB.

(ECF No. 32 at 12-13.)

The only "benefit" identified in this case that is provided by the District is the benefit of transportation between daycare facilities in the District and schools attended by students who reside in the District. That benefit is provided to the guardians—like K.K.—of the students in the District who are responsible for the students prior to and after the school day.[4] S.K. in the proposed amended complaint did not set forth factual allegations sufficient to plausibly show that the District withheld any *benefit* to which he was entitled on the basis of his disability. It would be futile to grant S.K. leave to file an amended complaint because after the extensive briefing and detailed allegations already made, the court can discern no additional factual allegations that could be made for him to state a plausible claim for relief. S.K.'s motion for leave to file an amended complaint

---

[4]    In United States v. Nobel Learning Communities, Civ. Action 09-1818, 2010 WL 1047730 (E.D. Pa. Mar. 24, 2010), the court held parents of disabled children who were allegedly disenrolled or denied enrollment to a daycare facility because of their disabilities did not have injuries distinct and separate from their disabled children because "daycare is not a service for parents because children, not parents, partake in the daycare activities." Id. at *5.
        Here, K.K. and S.K. in the proposed amended complaint allege that the only reason S.K. was in daycare was so that K.K. could work. Based upon that allegation, the court—viewing that allegation in the light most favorable to K.K.—would have to infer plausibly that there was a direct benefit to K.K. provided by the transportation service. In other words, the court could not plausibly infer that the transportation service offered only derivative benefits to K.K., who would otherwise be responsible for transporting S.K. between Child's Way and the WPSB.

will, therefore, be denied.[5] Whether K.K. set forth factual allegations to plausibly show that the District withheld the benefit of the transportation service from her on the basis of S.K.'s disability will be discussed below.

### C. Claims Asserted by K.K.

#### 1. Standing of K.K Under Article III of the United States Constitution

The District in its brief in opposition to the motion for leave to file an amended complaint argues filing the proposed amended complaint would be futile because K.K. did not set forth factual allegations sufficient to plausibly show she has Article III standing in this case. (ECF No. 40 at 3.) The Third Circuit Court of Appeals has explained:

> "The standing inquiry … focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." Davis v. FEC, 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008). To establish that stake, a plaintiff must show three elements: injury-in-fact, causation, and redressability. In the seminal standing opinion Lujan v. Defenders of Wildlife, the Supreme Court described those elements as follows:
>
>> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.' " Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly … trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely

---

[5]     The District argues it was improper for S.K. to file the motion for leave to file an amended complaint because the court permitted K.K., who previously requested leave to amend—and not S.K., who did not previously request leave to amend—to file a motion for leave to file an amended complaint. (ECF No. 40 at 3 n.1.) The court need not address this argument because S.K.'s motion for leave to file an amended complaint will be denied for the reasons stated herein.

> "speculative," that the injury will be "redressed by a
> favorable decision."

Constitution Part of Pa. v. Aichele, 757 F.3d 347, 360 (3d Cir. 2014) (quoting Lujan v.

Defenders of Wildlife, 504 U.S. 555, 560 (1992).

K.K. as S.K.'s mother has a legally protected interest under the Rehabilitation

Act, the ADA, and Chapter 15, i.e., the right not to be discriminated against on the basis

of S.K.'s disabilities. Doe, 242 F.3d at 447 ("The protections of the ADA extend to

'qualified individuals' who are discriminated against because of their relationship or

association with individuals who have a known disability."). K.K. plausibly alleged that

the District invaded that legally protected interest by failing to reasonably modify its

transportation service to give her access to the transportation service that is equal to

that of parents of nondisabled children. Under Title II of the ADA, a public entity has an

affirmative duty to make reasonable modifications in its policies and programs to avoid

discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7).  Section 35.130(b)(7)

provides:

> (7) A public entity shall make reasonable modifications in policies,
> practices, or procedures when the modifications are necessary to avoid
> discrimination on the basis of disability, unless the public entity can
> demonstrate that making the modifications would fundamentally alter the
> nature of the service, program, or activity.

Id.  According to the allegations in the proposed amended complaint:

– the District provided transportation between daycare facilities in the District and
  schools attended by students who are part of the District (ECF No. 34-1 ¶ 18);

– S.K. could not attend a daycare center within the district because none of the
  daycare centers within the district could meet his medical needs (Id. ¶¶ 19, 23,
  24);

- K.K. informed the District that S.K. could not attend a "regular" daycare and "the type of care [S.K.] receives at Child's Way 'is medically necessary due to his conditions'" (Id.);

- the District provides S.K. transportation from his home located within the District to the WPSB, which is located 1.69 to 1.78 miles from Child's Way (Id. ¶ 22); and

- the District refused to provide K.K. the benefit of transporting S.K. between Child's Way and WPSB because Child's Way is located outside the District's attendance boundaries (Id. ¶ 25).

The foregoing allegations and the reasonable inferences drawn therefrom plausibly show that the District knew K.K. could not participate in the transportation program because of S.K.'s disabilities but refused to make a reasonable modification in its program to afford K.K. access to the program equal to that of parents with nondisabled children. In other words, the allegations in the proposed amended complaint show that the District invaded K.K.'s legally protected interest not to be discriminated against based upon S.K.'s disabilities by refusing to reasonably modify the transportation program to give her full and equal access to the transportation program.

The District's invasion of K.K.'s legally protected interest is concrete, particularized, and actual. The Third Circuit Court of Appeals has explained that:

> An injury is "concrete" if it is "real," City of L.A. v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), or "distinct and palpable, as opposed to merely abstract," Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (quotation marks and citations omitted)[.]

N.J. Physicians v. President of U.S., 653 F.3d 234, 238 (3d Cir. 2011). The Supreme Court has recognized that "a claim of stigmatic injury" suffered by an *entire class* of people is abstract and not sufficiently concrete to confer article III standing on a claimant. Allen v. Wright, 468 U.S. 737, 755 (1984) (abrogated on other grounds).

Claims of stigmatic injury *are* sufficiently concrete to confer article III standing to the extent the claimants "are personally subject to discriminatory treatment." Id. at 757 n.22. The Supreme Court has defined *particularized* injury as injury "affect[ing] the plaintiff in a personal and individual way." Lujan, 504 U.S. at 560. K.K. in the amended complaint alleges that she was *personally* discriminated against on the basis of S.K.'s disabilities and *actually* excluded from receiving access to the transportation service that was equal to the access given to parents of nondisabled children. Under those circumstances, K.K. alleged factual allegations sufficient to plausibly show she suffered a concrete and particularized injury.

> The court of appeals in New Jersey Physicians explained:
>
> The second requirement—"actual or imminent, not conjectural or hypothetical"—makes plain that if a harm is not presently or "actual[ly]" occurring, the alleged future injury must be sufficiently "imminent." Imminence is "somewhat elastic," Lujan, 504 U.S. at 564 n. 2, 112 S.Ct. 2130, but requires, at the very least, that the plaintiffs "demonstrate a realistic danger of sustaining a direct injury," Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (emphasis added); see also Lujan, 504 U.S. at 564 n. 2, 112 S.Ct. 2130 (requiring that an imminent injury be "certainly impending" (quotation marks omitted)). In other words, there must be a realistic chance—or a genuine probability—that a future injury will occur in order for that injury to be sufficiently imminent.

N.J. Physicians, 653 F.3d at 238. Here, K.K.'s alleged injury based upon the allegations in the amended complaint is not conjectural or hypothetical. She alleges that she could not participate in the transportation service because the District refused to reasonably modify its transportation service and transport S.K. between the WPSB and Child's Way, the only daycare capable of meeting his medical needs. (ECF No. 34-1 ¶¶ 25-27.) Based upon the foregoing, K.K. set forth factual allegations in the amended complaint sufficient to satisfy the injury in fact requirement of Article III standing.

K.K. plausibly alleged that the District *caused* her injury, i.e., her injury is "fairly...trace[able]" to the District's conduct. Lujan, 504 U.S. at 260. K.K. set forth factual allegations to plausibly show that she could not participate in the transportation service because the District refused to reasonably modify the transportation service. Cortez v. City of Porterville, 5 F.Supp.3d 1160, 1165 (E.D. Ca. 2014) ("Mr. Cortez's inability to fully and equally access the Sports Complex's playing fields and playground with his granddaughter is traceable to the City's alleged failure to provide 'accessible pedestrian pathways from the parking facilities to the playing fields and playgrounds.'"). There is no indication in the amended complaint that K.K.'s exclusion from the transportation service is "'th[e] result [of] the independent action of some third party not before the court.'" Lujan, 504 U.S. at 561-62 (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41 (1976)). Under those circumstances, K.K.'s well-pled allegations satisfy the causation element of Article III standing.

K.K.'s alleged injury—exclusion from the transportation service—is likely to be redressed by a favorable decision in this case. If K.K. can prove the District is liable for discriminating against her under the Rehabilitation Act, the ADA, and Chapter 15, she may be entitled to equitable relief, [6] i.e., the issuance of an order directing the District to

---

[6] A plaintiff's whose rights are violated under the Rehabilitation Act and the ADA may be entitled to equitable relief. 1 AMERICANS WITH DISABILITIES PRACTICE AND COMPLIANCE MANUAL § 258 (2014) ("One whose rights have been violated under § 504 is entitled, in proper cases, to temporary, preliminary and permanent injunctive relief, as well as to declaratory relief."). The Third Circuit Court of Appeals has recognized that the remedies available under the ADA are the same remedies available under the Rehabilitation Act. Bowers v. Nat'l Collegiate Athletic Ass'n, 346 F.3d 402, 418-19 (3d Cir. 2003). The court of appeals in Bowers commented:

> Though section 504 does not in itself provide a private right of action for aggrieved individuals, it does state that the "remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964

give K.K. access to the transportation service by reasonably modifying the program to transport S.K. between the WPSB and Child's Way. Based upon the foregoing, the District's argument that K.K. does not have Article III standing in this case is unavailing and not a basis for the court to deny her motion for leave to file an amended complaint.

## 2. Associational Discrimination

The court in its opinion dated March 20, 2015, explained that K.K. may have standing in her own right to sue for the injuries she sustained as a result of the District depriving her of the benefit of transporting S.K. between Child's Way and the WPSB. To sufficiently allege an associational discrimination claim against the District under the Rehabilitation Act and the ADA, K.K. must set forth factual allegations sufficient to plausibly show:

> (1) a logical and significant association with an individual with disabilities; (2) that a public entity knew of that association; (3) that the public entity

---

[42 U.S.C.A. § 2000d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of federal financial assistance or federal provider of such assistance under section 794 of this title." Id. § 794a(a)(2). Inasmuch as courts have held that Title VI implies a private right of action, "private individuals may sue to enforce § 601 of Title VI and obtain both injunctive relief and damages." Alexander v. Sandoval, 532 U.S. 275, 279, 121 S.Ct. 1511, 1516, 149 L.Ed.2d 517 (2001).

Title II of the ADA provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. As in the case of section 504, Title II does not, in terms, create a private right of action. Instead, it provides that the remedies, procedures and rights applicable to section 504 of the Rehabilitation Act also are applicable under Title II. Id. § 12133.

Id. K.K. may, therefore, be entitled to equitable relief to remedy her injury—exclusion from full and equal access to the transportation service provided by the District—under the Rehabilitation Act, the ADA, and Chapter 15.

discriminated against [her] because of that association; and (4) [she] suffered a direct injury as a result of the discrimination.

Schneider, 190 F.Supp.2d at 1091. K.K. in the proposed amended complaint plausibly alleged that she—as S.K.'s mother—has a significant association with an individual with disabilities.[7] K.K. plausibly alleged that she communicated with the District about her need to place S.K. at Child's Way before and after school. K.K. alleged that S.K. had an IEP with the District which placed him at WPSB. The reasonable inferences drawn from those allegations are that the District knew that K.K. was S.K.'s parent and S.K. was disabled.

With respect to the third element, i.e., the District discriminated against her because of her association with S.K., K.K. plausibly alleged that the District discriminated against her based upon S.K.'s disabilities by refusing to make a reasonable modification in the transportation service to transport S.K. between Child's Way—which was outside the school's attendance boundaries—and the WPSB. As discussed above, under Title II of the ADA, a public entity has an affirmative duty to make reasonable modifications in its policies and programs to avoid discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7). The allegations in the amended complaint and the reasonable inferences drawn therefrom plausibly show that the District knew K.K. could not participate in the transportation program because of S.K.'s disabilities but refused to make a reasonable modification in its program to afford K.K. access to the program equal to that of parents with nondisabled children. (ECF No. 34-1 ¶¶ 18-19, 22-25.) Under those circumstances, K.K. set forth factual allegations in the

---

[7]     The District does not dispute the allegations that S.K. is disabled.

amended complaint to plausibly show that the District discriminated against her because of her association with S.K.

With respect to the fourth element of a claim for associational discrimination, K.K. must set forth factual allegations to plausibly show she suffered a direct injury as a result of the discrimination. K.K. in the proposed amended complaint plausibly alleges that the District discriminated against her because of S.K.'s disabilities by failing to provide a reasonable modification in its transportation service to give her access to the transportation service equal to that of parents with nondisabled children. K.K., therefore, set forth factual allegations in the proposed amended complaint to plausibly show she suffered a direct injury—exclusion from full and equal access to the transportation service provided by the District—as a result of the discrimination.

K.K. in the proposed amended complaint also alleges that the District's actions caused her "significant stress and emotional suffering, such that [she] has sought private therapy services beginning in 2012 and continuing through the date [of the proposed amended] Complaint." (ECF 34-1 ¶ 32.) There is a dispute among the circuits about whether a plaintiff is entitled to damages for emotional distress under either the Rehabilitation Act or the ADA. Schultz v. Young Men's Christian Ass'n of the United States, 139 F.3d 286 (1st Cir. 1998) ("Whether damages can be awarded for emotional injury is, at least nominally, a closer question, because the Supreme Court has not spoken directly on this point, and the case law reflects a split of authority."); 1 AMERICANS WITH DISABILITIES PRACTICE AND COMPLIANCE MANUAL § 260 (2014). At least one court of appeals has held that victims of discrimination under the Rehabilitation Act and the ADA may recover compensatory damages for noneconomic harm such as

emotional distress. <u>Sheely v. MRI Radiology Network, P.A.</u>, 505 F.3d 1173, 1198 (11th Cir. 2007) (holding that a "subset of compensatory damages—non-economic compensatory damages—is available under § 504 of the Rehabilitation Act for intentional discrimination"). The court in <u>Sheely</u> held that a plaintiff under the Rehabilitation Act must prove he or she suffered intentional discrimination to be entitled to noneconomic compensatory damages for emotional distress. <u>Id.</u> Other courts have held that damages may not be awarded for emotional distress under the Rehabilitation Act. <u>Nathanson v. Medical College of Pa.</u>, Civ. Action No. 1991 WL 83112, at * 5 (E.D. Pa. May 13, 2991) ("Additionally, plaintiff cannot recover damages for emotional distress under Title VI and, necessarily, the Rehabilitation Act."); <u>Bell v. Board of Educ. Of Albuquerque Public Schools</u>, 652 F.Supp.2d 1211 (D.N.M. 2008); <u>United States v. Forest Dale, Inc.</u>, 818 F.Supp. 954 (N.D. Tex. 1993). The Court of Appeals for the Third Circuit has not addressed this issue.

It is unclear from the proposed amended complaint whether K.K. is seeking compensatory damages for the emotional distress allegedly caused by the District or for the cost of therapy related to the emotional distress allegedly caused by the District.[8] To

---

[8] At a hearing held on August 22, 2014, counsel for S.K. and K.K. commented:

> The only time intent is required is when a party is seeking non-equitable compensatory damages, and we are not alleging compensatory damages. We are asking for injunctive, I believe equitable relief prospectively and retrospectively. So there is no intent requirement from our understanding of the law, and we're happy to brief that for the Court if the Court would require further explanation of that issue.

(H.T. 8/22/14 (ECF No. 28) at 9.) K.K. was not named as a plaintiff in her own right in the original complaint. The original complaint did not, therefore, contain allegations about K.K.'s emotional distress or need for therapy which was allegedly caused by the District.

be entitled to compensatory damages under the Rehabilitation Act and the ADA, K.K. must prove the District intentionally discriminated against her. The Third Circuit Court of Appeals has held that "a showing of deliberate indifference may satisfy a claim for compensatory damages under § 504 of the RA and § 202 of the ADA." <u>S.H. v. Lower Meriod Sch. District</u>, 729 F.3d 248, 263 (3d Cir. 2013). The court of appeals explained that to satisfy the deliberate indifference standard, a plaintiff must show: "(1) *knowledge* that a federally protected right is substantially likely to be violated…, and (2) *failure to act* despite that knowledge." <u>Id.</u> at 265 (emphasis in original). "Thus, a defendant need not have 'actual knowledge' of a violation to establish deliberate indifference, but rather need only have knowledge that harm to a right is 'substantially likely.'" <u>Prakel v. Indiana</u>, --- F.Supp.3d ----, Civ. Action No. 12-45, 2015 WL 1455988, at *19 (S.D. Ind. Mar. 30, 2015) (quoting <u>Hunter v. D.C.</u>, 64 F.Supp.3d 158, 168 n.9 (D.C. 2014)).

The court in <u>Prakel</u> applied the deliberate indifference standard to a failure to accommodate claim brought under the § 504 of the Rehabilitation Act and Title II of the ADA. <u>Prakel</u>, 2015 WL 1455988, at *19. The court explained:

> "When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." <u>Duvall v. County of Kitsap</u>, 260 F.3d 1124, 1139 (9th Cir.2001); accord <u>Barber</u>, 562 F.3d at 1229.
> …
> Under the second prong of the test, a plaintiff must establish that the defendant deliberately failed to satisfy its duty to act in response to the accommodation request. <u>Duvall</u>, 260 F.3d at 1139–40. It is the defendant's duty to undertake a fact-specific investigation by gathering information from the plaintiff (and qualified experts, if necessary) to determine the proper accommodation required, giving "primary consideration" to the plaintiff's preference. <u>Id.</u> at 1139.

<u>Prakel</u>, 2015 WL 1455988, at *19. The parties did not address whether in the Third Circuit a plaintiff is entitled to noneconomic compensatory damages for emotional distress under the Rehabilitation Act and the ADA. The court, therefore, will defer ruling on that issue until it is raised at a later stage in this litigation.

Based upon the foregoing discussion, K.K. in the proposed amended complaint sufficiently alleged that: (1) she has a significant association with her disabled child; (2) the District knew about the association; (3) the District discriminated against her because of that association, i.e., it denied her access to the transportation service because of her son's disability, and (4) she suffered a direct injury as a result of the discrimination, i.e., she was denied access to the transportation service that was equal to that of parents with nondisabled children. K.K.'s claims in the proposed amended complaint for associational discrimination under the Rehabilitation Act, the ADA, and Chapter 15 satisfy the standards set forth in <u>Iqbal</u> and <u>Twombly</u>. The filing of the proposed amended complaint would not, therefore, be futile. K.K.'s motion for leave to file an amended complaint will be granted with respect to the associational discrimination claims she asserts on her own behalf.

### 3. Conclusion

There is no plausible claim in the proposed amended complaint that the District denied S.K. any benefit to which he was entitled; rather, there *is* a plausible claim in the proposed amended complaint that the District denied K.K.—who has Article III standing and is S.K.'s mother—access to the transportation service that was equal to the access given to parents of nondisabled children. The motion for leave to file an amended complaint (ECF No. 34) will, therefore, be GRANTED with respect to the claims

asserted on K.K.'s behalf and DENIED with respect to the claims asserted on S.K.'s behalf. An appropriate order will be entered.

BY THE COURT,

Dated: November 19, 2015
/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Chief United States District Judge