IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| K.K. | : | |
| | : | |
| Plaintiff, | : | C.A. No. 14-218 |
| | : | |
| v. | : | |
| | : | |
| NORTH ALLEGHENY SCHOOL DISTRICT | : | JUDGE JOY FLOWERS CONTI |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

AND NOW, comes the Plaintiff, K.K., by and through her Attorney, Jeffrey J. Ruder, Esq., and files the following Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment.

**INTRODUCTION AND FACTUAL BACKGROUND**

This Memorandum of Law is filed in Opposition to Defendant's Motion for Summary Judgment. In addition, Plaintiff's own Motion for Summary Judgment was filed on October 3, 2016. Plaintiff incorporates by reference herein her Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and her Concise Statement of Material Facts ("P-SOF").

The record overwhelmingly precludes summary judgment for the District and is replete with evidence in support of finding that Plaintiff K.K. is entitled to summary judgment on all counts as a matter of law. Specifically, the undisputed facts demonstrate that the District discriminated against K.K. on the basis of S.K.'s disability when it failed to conduct an individualized inquiry into whether K.K. could access the benefit of the daycare-to-school transportation policy with the provision of a reasonable accommodation. The record also establishes that the District discriminated

1

against K.K. when it ultimately failed to provide a reasonable accommodation to its transportation policy, such that K.K. was forced to choose between her job, her son's safety and her son's education.

## STATEMENT OF THE ISSUES PRESENTED

1. Whether the record supports a finding that the District is entitled to judgment as a matter of law?

    **Suggested Answer: No.**

2. Whether the record supports a finding that K.K. is entitled to judgment as a matter of law because it undeniably demonstrates that the District failed to provide a reasonable modification to its transportation policy, which K.K. could not access on account of S.K.'s disability?

    **Suggested Answer: Yes.**

## STANDARD OF REVIEW

Summary judgment must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2).

Upon demonstrating to the court that no genuine issues of material facts exist and that the moving party is entitled to judgment as a matter of law, the burden shifts to the non-moving party to persuade the court that there is more than "some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In doing so, the burden rests on the non-moving party to present specific facts that are supported by admissible evidence that contradict those averred by the movant, indicating a genuine issue for trial. Lugan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884 (1990).

Upon failing to produce evidence from which a reasonable factfinder could enter a verdict in the non-moving party's favor, the Court must grant summary judgment. Lawrence v. Nat'l Westminster Bank N.J., 98 F.3d 61, 65 (3d Cir. 1996).

**ARGUMENT**

K.K.'s claims arise under Section 504, Chapter 15 and Title II of the ADA, and are supported by the factual record set forth in the Amended Complaint and which were stipulated to by both K.K. and the District at the Due Process Hearing.

The record demonstrates that the District discriminated against K.K. with deliberate indifference when it failed to conduct a meaningful, individualized inquiry into whether it could reasonably modify its transportation policy despite knowing that it was likely to result in discrimination on the basis of S.K.'s disability. The record also demonstrates that the District discriminated against K.K. when, in fact, it failed to provide transportation to S.K. between daycare and school because S.K.'s disabilities prevented him from accessing any daycare facilities within the District attendance zone.

Specifically and contrary to the District's assertions, the record irrefutably demonstrates that: (1) the District had a transportation policy in place for the benefit of parents of its students whereby it would transport students between daycare and school so long as the daycare was located within its attendance boundaries; (2) the District knew that no local daycares were capable of caring for S.K.; (3) the District knew that there was a daycare located less than two miles from S.K.'s educational program; (4) the District knew that it had an obligation to consider whether it could provide a reasonable modification to its transportation policy; (5) the District made a calculated decision not to conduct an individualized inquiry despite knowing that its actions may be considered discriminatory; and (6) the District ultimately decided not to transport

S.K. between daycare and school despite knowing that he could not access local daycare facilities.

These facts establish that the District is not entitled to summary judgment on any of K.K.'s claims. Rather, the record irrefutably demonstrates that K.K. is entitled to summary judgment on all of her claims such that she is entitled to declaratory, equitable and compensatory relief.

**THE DISTRICT DISCRIMINATED AGAINST K.K. WHEN IT DENIED HER REQUEST FOR S.K.'S TRANSPORTATION BETWEEN DAYCARE AND SCHOOL ON THE BASIS OF HIS DISABILITY.**

Section 504, Title II of the ADA and Chapter 15 prohibit school districts from discriminating on the basis of disability. 20 U.S.C. § 794[1]; 42 U.S.C. § 12132; 28 C.F.R §130.35; 22 Pa. Code. § 15.3. This discrimination prohibition imposes an affirmative duty on school districts to provide "services and activities in such a manner as is necessary to afford [disabled] students an equal opportunity for participation in such services and activities." 34 C.F.R. § 104.37(a)(1). Thus, if a protected individual cannot access a service or activity without a reasonable accommodation, a school district is obligated first to conduct an individualized inquiry into whether a requested accommodation is reasonable, and second, to offer the accommodation if it is reasonable.

K.K. is a protected individual under these laws and entitled to relief upon demonstrating that the District discriminated against her because of her association with S.K., her minor child with a disability. Def.'s Mot. for Summ. J. at ¶¶25, 26. Specifically, the record demonstrates that: (1) K.K. had a "logical and significant association with the individual with disabilities;" (2) the

---

[1] Section 504 and Title II of the ADA differ insofar as the former covers federally funded programs while the latter covers public entities. School districts are those subject to the requirements of both. While Section 504 prohibits discrimination solely on the basis of disability, Title II of the ADA prohibits discrimination on the basis of disability even if there are other reasons for a covered entity's discriminatory actions.

4

District knew of K.K.'s association with her disabled son; (3) the District discriminated against K.K. because of her association with S.K.; and (4) K.K. suffered a direct injury as a result of her association. S.K. v. N. Allegheny Sch. Dist., 146 F. Supp. 3d 700, 711-712 (W.D. Pa. 2015) (citing Schneider v. Cnty. of Will, 190 F.2d 1082, 1091 (N.D. Ill. 2002) (citing 28 C.F.R. § 35.130(g)).

Taking each element in turn, it is undeniable that the District discriminated against K.K. and is not entitled to summary judgment. First, the District does not and cannot contest that K.K., as S.K.'s parent, has a logical and significant relationship with S.K., an otherwise qualified student with a disability under Section 504, Title II of the ADA and Chapter 15. P-SOF ¶¶1, 4; Def's Concise Statement of Material Facts ("D-SOF") ¶1; Def.'s Mot. for Summ. J. at ¶26. Similarly, the District cannot dispute that it knew of K.K.'s association with S.K., her disabled minor child. D-SOF ¶1. Thus, the first and second elements of proving an associational discrimination claim are satisfied.

Next, contrary to the District's empty assertions, the record readily establishes that the District discriminated against K.K. because of her association with S.K. As this Court explained, "K.K. as S.K.'s mother has a legally protected interest under [Section 504], the ADA, and Chapter 15, i.e., the right not to be discriminated against on the basis of S.K.'s disabilities." S.K., 146 F. Supp. 3d at 712 (citing Doe v. Cnty. Of Centre Pa., 242 F.3d 437, 447 (3d Cir. 2001) ("The protections of the ADA extend to 'qualified individuals' who are discriminated against because of their relationship or association with individuals who have a known disability.'"). The District's duty not to discriminate imposes an affirmative obligation to provide reasonable accommodations to their policies and programs when necessary for a protected individual to access such policies or programs. See 28 C.F.R. § 35.130(b)(7). Thus, the relevant inquiry is not, as the District asserts,

whether "Plaintiff was treated in the same manner as those parents residing in the District with either disabled or non-disabled children," but rather whether K.K. could have accessed the benefits of the transportation program with the provision of a reasonable accommodation. See Def.'s Brief in Support of its Mot. for Summ. J. at 5.

To accept the District's argument that it need only treat everyone the same without regard to disability would be akin to upholding a policy whereby a school district required all students, including those in wheelchairs, to climb stairs in order to access a school building. The law is unambiguous on this point. In Alexander v. Choate, the United States Supreme Court explained that "much of the conduct that Congress sought to alter in passing [Section 504] would be difficult if not impossible to reach were [it] construed to proscribe only conduct fueled by a discriminatory intent. For example, elimination of architectural barriers was one of the central aims of [Section 504], yet such barriers were clearly not erected with the aim or intent of excluding the handicapped." 469 U.S. 287, 296–97 (1985) (citing S.Rep. No. 93-318, p. 4 (1973)) (citing also U.S.Code Cong. & Admin.News 1973, pp. 2076, 2080).

Here, as the District well knew, K.K. could not utilize the transportation program for S.K. without a reasonable modification to the policy, because to do so would have meant enrolling S.K. at a local daycare facility that would have endangered S.K.'s life. P-SOF ¶¶9, 13, 14, 20, 21, 30. Even if the policy itself were facially neutral, the application of the policy without regard to the needs of disabled individuals is not benign. Rather, when the failure to provide a reasonable accommodation to a facially neutral policy prevents access to the policy's benefits, that is discrimination.

An accommodation must be considered reasonable if it does not impose an "undue financial and administrative burden" or require "a fundamental alteration to the nature of [the] program."

Sch. Bd. Of Nassau County v. Airline, 480 U.S. 273, 287 fn 17 (1987) (citing, Se. Cmty. Coll., 442 U.S. at 412 (1979)). As K.K. explained in her filings, the duty to provide a reasonable accommodation requires a meaningful inquiry into whether a protected individual can access the program or benefit at issue with the provision of a reasonable accommodation. See Wagner v. Fair Acres Geriatric Ctr., 49 F.3d 1002, 1009 (3d Cir. 1995) (explaining that if "the refusal to modify an existing program would be unreasonable" then it is discriminatory). Here, the District discriminated against K.K. when it repeatedly failed to conduct a meaningful, individualized inquiry into whether the transportation policy could be reasonably modified to accommodate K.K. on account of S.K.'s disability.

Importantly, the District fails to cite *any* attempt to inquire into whether modifying its policy for K.K. would amount to an undue financial and administrative burden or require a fundamental alteration to the nature of the program. Without any factual basis explaining efforts to consider a reasonable accommodation, the District offers only legal conclusions that it had no duty to do so. D-SOF ¶¶18, 27. Rather, the District acknowledges that "the sole basis for the decision was the location of A Child's Way" rather than concerns of an undue burden or fundamental alteration of the program. Def.'s Brief in Support of its Mot. for Summ. J. at 6. On that basis alone, where there is zero evidence that the District conducted a meaningful and individualized inquiry, K.K. establishes discrimination.

While the failure to conduct an individualized inquiry is, in itself, discrimination, the District further discriminated against K.K. when it ultimately refused to transport S.K. between daycare and school. Moreover, the District's assertion that it treated K.K. "in the same manner as every other parent residing in the District" and that it "denied [K.K.'s] request in accordance with its practice to not provide transportation to and from daycare facilities outside of the

District's boundaries" demonstrates intentional discrimination. See S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 265 (3d Cir. 2013) (explaining that deliberate indifference can be inferred from a school district's failure to act despite knowing that a federally protected right is substantially likely to be violated). Here, not only should the District's Motion for Summary Judgment fail, but K.K.'s Motion for Summary Judgment should be granted on all counts where the record establishes discrimination with deliberate indifference. See Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001) ("When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test.").

In contrast to the District's stark failure to highlight a single fact that would support its Motion for Summary Judgment, K.K. has clearly set forth a factual basis supporting her claim that the District discriminated against her because of S.K.'s disability when it failed to conduct a meaningful, individualized inquiry into whether it could provide a reasonable accommodation. Specifically, K.K. repeatedly notified the District of her need for transportation to a daycare facility located outside of the District attendance zone, though less than two miles from S.K.'s educational placement at the Western Pennsylvania School for Blind Children ("WPSB"). P-SOF ¶¶9, 13, 14, 20, 21, 30, 32.

K.K. also repeatedly sought to work with the District to find a reasonable solution that would not be unduly costly or burdensome. For example, on multiple occasions, K.K. informed the District that several other school districts provided transportation between Child's Way and WPSB and that they may be able to provide transportation to S.K. if the District would share in the cost. P-SOF ¶¶16, 27. On at least one instance, the Shaler School District expressly offered that it would

transport S.K. were the District agreeable to collaborating on cost. P-SOF ¶16, 27. The record is devoid of *any* mention on the part of the District to contact Shaler or any other school district to reach a transportation arrangement. S.K.'s educational program, WPSB, likewise reached out to the District asking whether they considered partnering with another school district. P-SOF ¶28. Again, the District failed to respond. P-SOF ¶28.

Rather than opting to conduct a meaningful, individualized inquiry into whether it could reasonably accommodate K.K. and S.K.'s needs, the District made bald, unsupported assertions that it would be an "inconvenience" to provide transportation. P-SOF ¶¶17, 18, 26. Accordingly, the District could not in its Concise Statement of Material Facts explain the nature or degree of the claimed "inconvenience." The District also failed to mention that it had previously provided transportation to S.K. for one summer between daycare and school, that the daycare facility was located less than two miles from WPSB, or that it never reached out to other school districts that offered to provide the transportation and to share costs. P-SOF ¶¶12, 15, 16, 28, 32. These failures significantly undercut any claim of "inconvenience."

The District's failure to conduct an individualized inquiry into whether a reasonable accommodation could be provided – meaning that it would not fundamentally alter the nature of the transportation policy or pose an undue burden – easily meets the threshold for establishing discrimination under Section 504 and Title II of the ADA. See Wagner, at 1014.

Even had the District conducted an inquiry into whether an accommodation would be reasonable, the District would still be liable for discriminating against K.K. because the record clearly demonstrates that an accommodation would have been reasonable. Thus, the ultimate refusal to transport S.K. between daycare and school is discriminatory. For example, as stated *supra*, the record belies any assertion that transporting S.K. would be inconvenient. Additionally,

the District would be hard-pressed to argue that an accommodation would fundamentally alter the nature of the program where the program itself is intended to assists parents and to transport students between school and daycare.

Moreover, the District's rationales are undercut by its repeated declarations that it would rather force K.K. into litigation than set a precedent. P-SOF ¶¶18, 31. The District's Assistant Director of Special Education Arleen Wheat considered that K.K. "will argue her case for transportation based on this discrimination claim…However, if the District wins the due process then past practice will be upheld regarding transportation to daycare facilities and if it loses, transportation arrangements for [S.K.] would only be specific to the order delivered by the Hearing Officer. This would eliminate the concern of providing transportation to any daycare facility for any child upon request of a family." P-SOF ¶31. Ultimately, this demonstrates a calculated decision to forego any consideration of a reasonable accommodation. Throughout its internal communications, the District consistently affirmed its preference to be sued and found liable for discrimination rather than to provide the modest accommodation that K.K. repeatedly requested for fear of setting a precedent. P-SOF ¶¶18, 31.

This case is similar to <u>Singh v. George Washington U. Sch. of Med. and Health Sciences</u>, where the school knew that a student had a disability and failed to consider any accommodation prior to dismissing her from its medical program. 508 F.3d 1097, 1105 (D.C. Cir. 2007). As in <u>Singh</u>, the District failed to identify any "major commitment of resources that would be wasted as a result of its having to consider Singh's accommodation claim at the time she raised it." <u>Id.</u>

Finally, the District's Motion for Summary Judgment must fail because the record demonstrates that K.K. suffered concrete, emotional and economic harm as a result of the District's failure to transport her son, S.K., between daycare and school for the 2013-2014 and

2014-2015 school years. As this Court explained, the singular failure to deny K.K. a "reasonable modification in its transportation service to give her access to the transportation service equal to that of parents with nondisabled children" constitutes harm sufficient to support a claim of associational discrimination. S.K., 146 F. Supp. 3d at 718. Moreover, where, as here, the District denied K.K. a reasonable accommodation for two full school years, K.K. suffered foreseeable economic and emotional harm.

Specifically, as K.K. explained in her Motion for Summary Judgment, she suffered emotional distress when the District's refusal to modify its policy meant that she had to choose between her son's education, her son's safety and her ability to work and to achieve long-term financial stability for her and her son. P-SOF ¶¶36, 37. Had K.K. elected to forego working, she and S.K. would have lost the income used for everyday necessities and would have instead been forced to rely on public benefits. This unsettling choice also would have prevented her from pursuing her career goals and seeking long-term financial stability. Moreover, had K.K. chosen to place S.K. in a daycare facility located within the District's attendance zone, S.K.'s safety would have been jeopardized due to the severity of his disability-based needs.

Ultimately, K.K. chose to work so that she could provide for her son – a decision that working parents of typically developing students did not need to consider because the District's transportation policy addressed that need. Because K.K. could not both transport S.K. between daycare and school while keeping her job and pursuing her career goals, S.K. spent two full school years in a daycare facility and was deprived of the benefits of his educational placement. P-SOF ¶33. This has continued to harm K.K., who has a concrete interest in the education of her son. As a result of this heart wrenching dilemma, K.K. subsequently required extensive therapy to address the ensuing stress and hardship. P-SOF ¶¶36, 37.

Here, the record clearly demonstrates that the District is liable to K.K. for discriminating against her because of her association with S.K. Because the District failed to meet its burden to demonstrate that it is entitled to judgment as a matter of law, its Motion for Summary Judgment must fail.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Plaintiff prays this Honorable Court deny Defendant's Motion for Summary Judgment.

Respectfully Submitted,

 _/s/ Jeffrey J. Ruder_____
Jeffrey J. Ruder
Attorney I.D. No. 79270
429 Forbes Avenue, Suite 450
Pittsburgh, Pennsylvania 15219
Telephone: (412) 281-4959
Fax: (412) 291-1389
Email: jeffruder@gmail.com

Attorney for Plaintiffs

Date:   November 2, 2016